UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| OSCAR A. GALVAN, JR., | § | |
| MARLENE BECERRA, | § | |
| GERARDO CONZALEZ, JR., and | § | |
| ARACELI GONZALEZ, | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | Case No. 3:25-CV-2766-x |
| v. | § | |
| | § | |
| HUNT REFINING COMPANY and | § | |
| HUNT CONSOLIDATED, INC., | § | |
| | § | |
| *Defendants.* | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court are Plaintiffs Oscar A. Galvan, Jr., Marlene Becerra, Gerado Conzalez, Jr., and Araceli Gonzalez's (collectively, "Plaintiffs") motion to remand and Defendants Hunt Consolidated, Inc's (HCI) motion to dismiss. (Docs. 26, 35). After due consideration, the Court **GRANTS** HCI's motion to dismiss and **DENIES WITHOUT PREJUDICE** Plaintiff's motion to remand.

## I.    Background

This case involves injuries that Plaintiffs suffered while working at Hunt Refining Company's (HRC) petroleum refinery in Tuscaloosa, Alabama. Plaintiffs were instructed to remove a flange from a pressurized piping system. Upon removal, Plaintiffs were hit with hot steam and boiling liquid that resulted them being hospitalized for their injuries.

Plaintiffs subsequently brought negligence, premises liability negligent undertaking, negligent training and supervision, gross negligence, respondeat superior, and loss of consortium claims against HRC.

Plaintiffs also included HCI as a defendant, alleging HCI "exercised direct and indirect control over the operations of HRC, including the policies, procedures, and safety protocols implemented at the Tuscaloosa, Alabama refinery."[1]  Plaintiffs also alleged that "at the time of the incident, HRC and HCI, [were] operating as a joint venture" and/or "joint enterprise where there was an agreement among the members of the group, a common purpose, a common pecuniary interest, and an equal right of control over the enterprise."[2]

HRC and HCI removed to federal court and the Plaintiffs moved to remand, alleging that HCI's Texas citizenship destroyed diversity.  HCI argued in response, and in its motion to dismiss, that it had been improperly joined by Plaintiffs.

## II.    Legal Standard

"The burden of demonstrating improper joinder is a heavy one."[3]  To establish a claim for improper joinder, the party must show either "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court."[4]  Under the second prong, courts "examine whether there is no possibility of recovery by the plaintiff against an

---

[1] Doc. 22 at 6.

[2] *Id.* at 10.

[3] *McDonal v. Abbott Lab'y*, 408 F.3d 177, 183 (5th Cir. 2005) (cleaned up).

[4] *Id.*

in-state defendant."[5]  In other words, "there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant."[6]

Courts determine whether there is a reasonable basis for recovery via a "Rule 12(b)(6)-type analysis."[7]  Under Rule 12(b)(6), a complaint must allege sufficient facts "to state a claim to relief that is plausible on its face."[8]  And a claim is plausible on its face when supported by enough facts that the Court can "draw the reasonable inference that the defendant is liable for the misconduct alleged."[9]  While a plaintiff does not have to plead detailed facts at this stage, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[10]  Additionally, "dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief."[11]

### III.   Analysis

HCI argues that the complaint fails to provide a reasonable basis for Plaintiffs' recovery against HCI because (1) the complaint's theories of agency and joint venture

---

[5] *Id.* (cleaned up).

[6] *Id.* (cleaned up).

[7] *Id.* at 183 n.6.

[8] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[9] *Iqbal*, 556 U.S. at 678.

[10] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[11] *Allen v. Walmart Stores, LLC*, 907 F.3d 170, 178 (5th Cir. 2018).

are built on conclusory statements and (2) the complaint fails to overcome the presumption of corporate separateness. The Court agrees.

To begin with, Plaintiffs' theories showing HCI's control over HRC—agency and joint venture—fail.

"An agency relationship exists when an individual has either actual authority or apparent authority to act on behalf of another."[12] To show that HCI had actual or apparent authority over HRC, Plaintiffs allege:

- HCI had "the right to control the means, method, and details of [HRC's employees'] work"[13]

- HCI "retained contractual control over the employees' operation of the refinery"[14]

- HCI and HRC had "an equal right of control over the enterprise"[15]

- "HCI exercised direct and indirect control over the operations of HRC, including the policies, procedures, and safety protocols implemented at the Tuscaloosa, Alabama refinery"[16]

- "HRC acted within the scope of its agency and was acting with the consent, permission, ratification, authorization, and knowledge of HCI. All actions of HRC alleged herein were ratified and approved by HCI and their respective

---

[12] *Exela Enter. Sols., Inc. v. NLRB*, 32 F.4th 436, 446 (5th Cir. 2022).

[13] Doc. 22 at 6.

[14] *Id*. at 10.

[15] *Id*.

[16] *Id*. at 6.

officers, directors, controlling persons, agents, aiders and abettors or co-conspirators"[17]

Merely stating a parent company controlled or ratified a subsidiary's acts without any additional facts is insufficient—even at this stage of litigation—to plausibly allege that an agency relationship exists.[18]  Accordingly, Plaintiffs' agency theory fails.

Their joint venture theory is similarly infirm.  All Plaintiffs allege to support this theory is that "[b]oth HRC and HCI also operated as a joint venture and/or joint enterprise where there was an agreement among the members of the group, a common purpose, a common pecuniary interest, and an equal right of control over the enterprise."[19]  Nothing more.  These are textbook conclusory statements and cannot make Plaintiffs' claims against HCI plausible.

Because these theories fail, Plaintiffs' complaint must overcome the Fifth Circuit's strong presumption of corporate separateness.[20]  This presumption "may be overcome by clear evidence . . . something beyond the subsidiary's mere presence within the bosom of the corporate family."[21]  To guide courts and plaintiffs, the Fifth Circuit set out seven factors to consider:

> (1) amount of stock owned by the parent of the subsidiary; (2) did the two corporations have separate headquarters; (3) did they have common officers and directors; (4) did they observe corporate formalities; (5) did

---

[17] *Id.* at 10.

[18] *Schakosky v. Client Servs., Inc.*, 634 F. Supp. 2d 732, 735–36 (E.D. Tex. 2007).

[19] Doc. 22 at 10.

[20] *See Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 338 (5th Cir. 1999).

[21] *Id.*

they maintain separate accounting systems; (6) did the parent exercise complete authority over general policy; (7) did the subsidiary exercise complete authority over daily operations.[22]

None of these factors favor Plaintiffs' position.

First, Plaintiffs make no allegations about HCI's ownership of HRC stock, the physical headquarters of HRC and HCI, corporate formalities, or the accounting practices of HRC and HCI. So the first, second, fourth, fifth, and seventh factors decisively favor HCI.

Second, Plaintiffs allege that HCI controls HRC because (1) there is one common officer and two common board members,[23] (2) six of HRC's officers and board members have offices at HCI's Dallas building,[24] (3) HCI's Dallas address is listed on HRC's tax filings as HRC's mailing address,[25] and (4) HRC's website advertises that HCI provides access to "people, operations and business support."[26]

But that is insufficient, as a matter of law, to overcome the presumption of separateness. That burden "is a significant one."[27] It is especially difficult to clear at without discovery, which is why parties ordinarily add other parties later in the suit if there is disregard for corporate forms. Sparse allegations of the third and sixth factors cannot make it plausible that the Plaintiffs prevail on a seven-factor test.

---

[22] *Id.* at 339.

[23] Doc. 39-1, Ex. 4.

[24] Doc. 39-1, Ex. 3.

[25] *Id.*

[26] Doc. 39-1, Ex.7.

[27] *Edwards Co., Inc. v. Monogram Indus., Inc.*, 700 F.2d 994, 1000 (5th Cir. 1983).

So Plaintiffs have failed to plead facts providing a reasonable basis for recovery against HCI, and the Court must dismiss their claims.

## IV.    Conclusion

For the foregoing reasons, the Court **GRANTS** HCI's motion to dismiss and **DISMISSES WITHOUT PREJUDICE** Plaintiffs' claims against HCI. The Court also **GRANTS** Plaintiffs leave to amend their complaint to cure these defects within twenty-eight days of the date of this order. The changes to the complaint are limited to curing the defects this order identifies. Because Plaintiffs' amended complaint will invariably affect the merits of Plaintiffs' motion to remand, the Court **DENIES WITHOUT PREJUDICE** Plaintiffs' motion to remand.

**IT IS SO ORDERED** this 3rd day of March, 2026.

_____
BRANTLEY STARK
UNITED STATES DISTRICT JUDGE