UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| OSCAR A. GALVAN, JR., et al.<br><br>*Plaintiffs*,<br><br>v.<br><br>HUNT REFINING COMPANY and HUNT CONSOLIDATED, INC.,<br><br>*Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 3:25-CV-2766-X |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiffs Oscar A. Galvan, Jr., Marlene Becerra, Gerardo Gonzalez, Jr., and Araceli Gonzalez's (the "Plaintiffs") motion to remand (Doc. 54), Defendant Hunt Consolidated Inc.'s (HCI) third motion to dismiss for improper joinder (Doc. 55), and Defendant Hunt Refining Company's (HRC) third motion to dismiss for lack of jurisdiction or in the alternative transfer (Doc. 58). Having considered the motions, briefing, and applicable law, the Court **GRANTS** HCI's motion to dismiss (Doc. 55), **DENIES** Plaintiffs' motion to remand (Doc. 53), **DOES NOT DECIDE** HRC's motion to dismiss (Doc. 58), and **TRANSFERS** this case to the Northern District of Alabama—Tuscaloosa Division (Doc. 58).

## I. Background

"If you're gonna play in Texas, you gotta have a fiddle in the band."[1] And if you're gonna sue in Texas, you gotta have connections to the State.

[1] Alabama, *If You're Gonna Play in Texas (You Gotta Have a Fiddle in the Band)* (1984).

HRC owns a petroleum refinery in Tuscaloosa, Alabama (the "Alabama Refinery"). Plaintiffs Oscar Galvan and Gerardo Gonzalez suffered burn injuries while working on a pressurized piping system at the Alabama Refinery. Plaintiffs blame their injuries on HRC and HCI's alleged failure to maintain equipment in Alabama, conduct risk assessments in Alabama, use proper equipment procedures in Alabama, and prevent work hazards in Alabama.

Plaintiffs subsequently sued HRC and HCI in Dallas County, Texas, which is decidedly not in Alabama. Why Dallas? Awesomeness of Dallas aside, Plaintiffs allege that HCI and HRC both have Dallas headquarters and assert that HCI "exercised direct and indirect control over the operations of HRC . . . at the [Alabama Refinery]."[2]

The Court has already dismissed Plaintiffs' agency theory against HCI.[3] And the Court has since ordered jurisdictional discovery to determine whether (1) HCI is a proper defendant; and (2) HRC's principal place of business is in Texas or Alabama. The parties have completed jurisdictional discovery.

## II. Hunt Consolidated, Inc. (HCI)

First, the Court again **GRANTS** HCI's motion to dismiss for improper joinder (Doc. 54) because HCI failed to allege an agency relationship between HCI and HRC.

---

[2] Doc. 53 ¶ 29.

[3] *See* Doc. 43.

### A. Legal Standard

Improper joinder occurs when a plaintiff cannot establish a cause of action against an in-state defendant in state court.[4] Parties can establish improper joinder by showing "either (1) actual fraud in the pleading of jurisdictional facts or (2) that the plaintiff is unable to establish a cause of action against the non-diverse defendant in state court."[5] The second option effectively looks at whether the Plaintiffs' claims would survive a Rule 12(b)(6) motion under the federal pleading standard.[6]

Rule 12(b)(6) authorizes dismissal when a complaint fails to "state a claim upon which relief can be granted."[7] A pleading in federal court must state "a short and plain statement of the claim showing that the pleader is entitled to relief."[8] In stating their claim, the plaintiff does not have to plead detailed facts, but "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[9] For a complaint to survive a motion to dismiss under Rule 12(b)(6), it must allege sufficient facts "to state a claim to relief that is plausible on its face."[10] And a claim is plausible on its face when supported by enough facts that the Court

---

[4] *See Smallwood v. Ill. Cent. R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004).

[5] *Parsons v. Baylor Health Care Sys.*, 2012 WL 5844188, at *2 (N.D. Tex. Nov. 19, 2012) (Fitzwater, C.J.) (cleaned up).

[6] *See Int'l Energy Ventures Mgmt., LLC v. United Energy Grp., Ltd.*, 818 F.3d 193, 204, 209 (5th Cir. 2016).

[7] FED. R. CIV. P. 12(b)(6).

[8] FED. R. CIV. P. 8(a)(2).

[9] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).

[10] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

can "draw the reasonable inference that the defendant is liable for the misconduct alleged."[11]

When considering a Rule 12(b)(6) motion to dismiss, the Court must construe the complaint liberally in favor of the plaintiff and accept all facts pleaded in the complaint as true.[12] That said, courts do not "accept as true legal conclusions, conclusory statements, or naked assertions devoid of further factual enhancement."[13]

### B. Application

The Court again dismisses Plaintiffs' claims again HCI. The Court previously held that "merely stating a parent company controlled or ratified a subsidiary's acts without any additional facts is insufficient—even at this stage of litigation—to plausibly allege that an agency relationship exists."[14] This problem remains.

Plaintiffs allege the following new facts after jurisdictional discovery:[15]

- HCI owns all 1,000 shares of HRC's capital stock and exercises complete stockholder control of HRC via proxy from Dallas.[16]
- The HRC "leadership" webpage boasts of access to HCI.[17]

---

[11] *Iqbal*, 556 U.S. at 678.

[12] *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).

[13] *Edmiston v. Borrego*, 75 F.4th 551, 557 (5th Cir. 2023) (citing *Benfield v. Magee*, 945 F.3d 333, 336–37 (5th Cir. 2019)).

[14] Doc. 43 at 5.

[15] *See generally* Doc. 43 (outlining facts Plaintiffs pled in their previous complaint). The Court also notes (without reaching the issue of fraud or piercing the pleadings) that many of Plaintiffs' new facts appear unsupported by the jurisdictional discovery Plaintiffs obtained from HCI. *See* Doc. 57.

[16] *See* Doc. 53 at 3.

[17] *Id.* at 4.

- HCI and HRC consolidate their tax returns.[18]
- HCI conducts fundamental corporate functions for HRC in Dallas, such as tax accounting, legal, insurance, and other general administrative activities.[19]
- HCI conducts employee training and safety procedure testing for HRC, giving it constructive knowledge of and direct responsibility for safety violations.[20]

These facts fail to overcome "the Fifth Circuit's strong presumption of corporate separateness."[21] The presumption "may be overcome by clear evidence . . . something beyond the subsidiary's mere presence within the bosom of the corporate family."[22] The Fifth Circuit analyzes the presumption with seven factors:

> (1) amount of stock owned by the parent of the subsidiary; (2) did the two corporations have separate headquarters; (3) did they have common officers and directors; (4) did they observe corporate formalities; (5) did they maintain separate accounting systems; (6) did the parent exercise complete authority over general policy; (7) did the subsidiary exercise complete authority over daily operations.[23]

These factors do not favor Plaintiffs.[24] Plaintiffs again rely on "sparse allegations of the third and sixth factors," and add conclusory allegations for the other factors.[25]

---

[18] *See id.* at 4.

[19] *See id.* at 4–5.

[20] *See id.* at 5, 8.

[21] Doc. 43 at 5 (citing *Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 338 (5th Cir. 1999).

[22] *Id.* (citing *Panalpina, Inc.*, 179 F.3d at 338).

[23] *Id.* (citing *Panalpina, Inc.*, 179 F.3d at 339).

[24] *See id.* at 6 (analyzing the factors and dismissing the previous complaint against HCI).

[25] Doc. 43 at 6 (cleaned up); *see generally* Doc. 53.

First, while Plaintiffs allege that HCI owns all HRC's stock, Plaintiffs admit they misconstrued that allegation.[26] In their motion to dismiss response brief, Plaintiffs admit that HCI only used to own HRC's stock but does not own HCI's stock now.[27] HCI's historical ownership of HRC's stock does not clearly show that HCI asserts enough control over HRC to make HRC its agent.[28]

Next, Plaintiffs' pleadings regarding the other factors remain conclusory and insufficient. Neither the new tax return consolidation nor webpage reference facts meet Plaintiffs' "significant" burden—they merely show that the companies belong to the same family.[29] Additionally, Plaintiffs' fundamental corporate function, employee training, and safety procedure allegations are too conclusory to meet the sixth or the seventh factor concerning HCI's authority.[30] So Plaintiffs did not plausibly allege agency.

Plaintiffs have once again failed to plead facts providing a reasonable basis for recovery against HCI under Rule 12(b)(6). So the Court **FINDS** that Plaintiffs improperly joined HCI and **GRANTS** HCI's motion to dismiss for improper joinder.

## III. Remand

Next, the Court **DENIES** Plaintiffs' motion to remand because HRC timely and properly removed the case and is completely diverse from Plaintiffs.[31]

---

[26] *See* Doc. 64 at 3–4.

[27] *See id.* at 3–4 n.1.

[28] *See* Doc. 43 at 5; *Panalpina, Inc.*, 179 F.3d at 338.

[29] Doc. 43 at 6 (citing *Edwards Co. v. Monogram Indus.*, 700 F.2d 994, 999 (5th Cir. 1983)).

[30] *See* Doc. 53 at 5, 8 (relying largely on HCI's email address appearing on an HRC training).

[31] HRC timely removed the case from Dallas County state court to this Court. *See* Doc. 1 at 1.

### A. Legal Standard

The removing party bears the burden of establishing subject matter jurisdiction and that removal is proper.[32] All doubts are resolved in favor of remand.[33] Diversity jurisdiction requires 1) total diversity of citizenship between the parties and 2) that the amount in controversy must exceed $75,000.[34] Defendants cannot remove cases if any defendant "is a citizen of the State in which such an action is brought."[35]

### B. Application

The Court denies Plaintiffs' motion because complete diversity exists between Plaintiffs and HRC.[36] Courts determine a corporation's citizenship based on its state of incorporation and principal place of business.[37] A corporation's principal place of business is the nerve center "where a corporations' officers direct, control, and coordinate the corporation's activities."[38] HRC incorporated in Delaware, so the only question is whether HRC has a principal place of business in Texas or Alabama.[39]

HRC has a principal place of business in Alabama—not Texas—because its officers direct its activities in Alabama. Plaintiffs only allege that one HRC officer

---

[32] *See Manguno v. Prudential Prop. & Cas. Ins.*, 276 F.3d 720, 723 (5th Cir. 2002).

[33] *See id.*

[34] *See* 28 U.S.C. § 1332

[35] 28 U.S.C. § 1441(b)(2).

[36] Plaintiffs are Texas citizens. *See* Doc. 53 at 2. And as discussed below, HRC is a citizen of Alabama and Delaware.

[37] *See Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010)

[38] *Id.* at 92–93.

[39] *See id.* at 80; Docs. 53 at 2–3; 54 at 16.

resides in Dallas.[40] So all but one of HRC's officers do not live in Texas.[41] While HRC's board resides in Texas, corporate boards generally do not control companies' daily operations.[42] Rather, HRC's officers control its daily operations, and these officers largely live in Alabama.[43] So HRC's principal place of business is in Alabama—not Texas—and the Court **DENIES** Plaintiffs' motion to remand.

## IV. Transfer

Next, the Court **GRANTS** HRC's alternative motion to transfer and **DOES NOT DECIDE** HRC's motion to dismiss. The Northern District of Alabama—Tuscaloosa Division is the proper venue for what remains of this case.

### A. Legal Standard

A district court is authorized to "transfer any civil action to any other district or division where it might have been brought" for "the convenience of parties and witnesses, in the interest of justice[.]"[44] Section 1404 transfer decisions "are committed to the sound discretion of the transferring judge."[45]

The transfer analysis has two steps: "First, the district court must ask whether the case might have been brought in the destination venue," and "second, the district court must weigh the private and public interest factors."[46] The Fifth Circuit has

---

[40] *See* Doc. 53 at 4 (Ashleigh Everett). The others are all merely HRC Board members. *See id.*

[41] *See id.*

[42] *See Hertz Corp.*, 559 U.S. at 92–93.

[43] *See id.*; Doc. 64 at 6.

[44] 28 U.S.C. § 1404

[45] *Mills v. Beech Aircraft Corp.*, 886 F.2d 758, 761 (5th Cir. 1989) (cleaned up).

[46] *In re Chamber of Commerce of U.S.A.*, 105 F.4th 297, 304 (5th Cir. 2024) (cleaned up).

reiterated that district courts should not just count the factors or find one factor to be of dispositive weight.[47] The private interest factors are:

> (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.[48]

And the public interest factors are:

> (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law.[49]

## B. Application

Neither party disputes that this case could have been brought in the Northern District of Alabama—Tuscaloosa Division. After all, Galvan and Gonzalez's injuries occurred at the Alabama Refinery. So the Court moves to the second part of the transfer analysis. After reviewing the record and weighing each factor, and without assigning dispositive weight to any single one, the Court concludes that the balance of factors favors transfer to the Northern District of Alabama—Tuscaloosa Division.

The private and public interest factors both support transfer because all the injuries and relevant events occurred in Alabama. Plaintiffs blame their injuries on HRC's alleged failure to maintain equipment in Alabama, conduct risk assessments in Alabama, use proper equipment procedures in Alabama, and prevent work hazards

---

[47] *See Lingo Telecom, LLC v. Woodcraft Supply Corp.*, No. 3:25-CV-1467-X, 2025 WL 3019496, at *2 (N.D. Tex. Oct. 29, 2025) (Starr, J.) (cleaned up).

[48] *Id.* (citing *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008)) (cleaned up).

[49] *Id.* (citing *In re Volkswagen*, 545 F.3d at 315) (cleaned up).

in Alabama.[50] And the events of this case have no connection to the Northern District of Texas beyond the Hunt family name.[51]

The Court understands Plaintiffs' desire to litigate in the greatest State in the universe, but the factors support a transfer to the Northern District of Alabama. So the Court must transfer this case to its Sweet Home: Alabama.[52]

## V. CONCLUSION

Accordingly, the Court **GRANTS** HCI's motion to dismiss for improper joinder and **DISMISSES WITH PREJUDICE** Plaintiffs' claims against HCI. The Court further **DENIES** Plaintiffs' motion for remand, **DOES NOT DECIDE** HRC's motion to dismiss, and **TRANSFERS** this case to the Northern District of Alabama—Tuscaloosa Division. Because this order transfers the case outside the Fifth Circuit, the Court **STAYS** this transfer for 21 days to allow for appellate review under Local Civil Rule 62.2.

**IT IS SO ORDERED** this 7th day of October, 2026.

BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

---

[50] *See* Doc. 53 at 7–9.

[51] Even Plaintiffs themselves do not reside in the Northern District of Texas. *See* Doc. 53 at 2 (pleading that Plaintiffs reside in the Southern District of Texas).

[52] *See* Lynyrd Skynyrd, *Sweet Home Alabama* (1988).